E-FILED
Wednesday, 05 April, 2023  10:56:47 AM
Clerk, U.S. District Court, ILCD

# Exhibit A



# Notice of Service of Process

null / ALL
**Transmittal Number: 26514162**
**Date Processed: 03/08/2023**

| | |
|---|---|
| **Primary Contact:** | Sasha Portes<br>Kedrion Biopharma, Inc.<br>400 Kelby St<br>Fl 11<br>Fort Lee, NJ 07024-2943 |

| | |
|---|---|
| **Entity:** | KEDPlasma LLC<br>Entity ID Number 2313620 |
| **Entity Served:** | Kedplasma, LLC |
| **Title of Action:** | Clarence Smith vs. Kedrion Biopharma Inc. |
| **Matter Name/ID:** | Clarence Smith vs. Kedrion Biopharma Inc. (13743641) |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Class Action |
| **Court/Agency:** | Sangamon County Circuit Court, IL |
| **Case/Reference No:** | 2023LA000022 |
| **Jurisdiction Served:** | Illinois |
| **Date Served on CSC:** | 03/06/2023 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Certified Mail |
| Sender Information: | Fish Potter Bolaiios, P.C.<br>630-355-7590 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

251 Little Falls Drive, Wilmington, Delaware 19808-1674  (888) 690-2882  |  sop@cscglobal.com

EFILED
1/24/2023 2:33 PM
Paul Palazzolo
7th Judicial Circuit
Sangamon County, IL
2023LA000022

## IN THE CIRCUIT COURT OF SANGAMON, ILLINOIS

CLARENCE SMITH, STARLA SMITH,                  )
ANTONIO ENRIQUEZ MATT DEVINE, and              )
MELISSA JOHNSON, INDIVIDUALLY AND ON           )
BEHALF OF ALL OTHERS SIMILARLY SITUATED,       )
                                               )
    *Plaintiffs,*                              )
                                               )       **2023LA000022**
v.                                             )       Case No.:
                                               )
KEDRION BIOPHARMA INC. and                     )
KEDPLASMA LLC.,                                )
                                               )
    *Defendants.*                              )
                                               )

## CLASS ACTION COMPLAINT

Plaintiffs Clarence Smith ("Clarence"), Starla Smith ("Starla"), Antonio Enriquez ("Enriquez"), Matt Devine ("Devine"), and Melissa Johnson ("Johnson") (collectively referred to as "Plaintiffs"), bring this Class Action Complaint individually and on behalf of all others similarly situated against Defendants Kedrion Biopharma Inc. and KEDPlasma LLC. (hereinafter "Defendants" or "KED") to stop their unlawful collection, use, and storage of Plaintiffs' and the proposed Class's sensitive, private, and personal biometric data. Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief including investigation conducted by their attorneys. Further, Plaintiffs allege as follows:

### PARTIES, JURISDICTION, AND VENUE

1.     Plaintiffs are individual citizens of the State of Illinois.

2.     Defendant KEDplasma LLC is a Delaware limited liability company. Its status to operate in Illinois has been revoked since 2022 according to the Illinois Secretary of State.

3.      Defendant Kedrion Biopharma, Inc. is a Delaware corporation that is registered to do business in the state of Illinois.  It is headquartered in Italy and utilizes the plasma collected by its Illinois facilities for its biopharmaceutical purposes.  It operates in Italy, Germany, India, Turkey, Hungary, Mexico, Columbia, Brazil, and the United States.

4.      Kedrion Biopharma, Inc.'s business model starts with what it describes as "our donors" that are made by the "generous donations in the US through our 30 collection centers". (2021, Annual Report)  Kedion Biopharma, Inc. formed  KEDplasma LLC to assist it in collecting plasma (and biometric data) from donors in Illinois and both entities operate from the same office suite in Fort Lee, New Jersey.

## INTRODUCTION

5.      While most establishments use conventional means for tracking identity, Defendants require that plasma sellers--like Plaintiffs--use biometric data when providing plasma to Defendants.

6.      This exposes Defendants' plasma sellers, including Plaintiffs, to serious and irreversible privacy risks.

7.      For example, if a biometric database is hacked, breached, or otherwise exposed – such as in the recent Equifax data breach – sellers have **_no_** means by which to prevent identity theft, unauthorized tracking, and other improper or unlawful use of this information.

8.      In 2015, a data breach at the United States Office of Personnel Management exposed the personal identification information, including biometric data, of over 21.5 million federal employees, contractors, and job applicants. U.S. Off. of Personnel Mgmt., *Cybersecurity Incidents* (2018), available at www.opm.gov/cybersecurity/cybersecurity-incidents.

9.      An illegal market already exists for biometric data. Hackers and identity thieves have targeted Aadhaar, the largest biometric database in the world, which contains the personal and biometric data – including fingerprints, iris scans, and a facial photograph – of over a billion Indian citizens. *See* Vidhi Doshi, *A Security Breach in India Has Left a Billion People at Risk of Identity Theft*, The Washington Post (Jan. 4, 2018), available at https://www.washingtonpost.com/news/worldviews/wp/2018/01/04/a-security-breach-inindiahas-left-a-billion-people-at-risk-of-identity-theft/?utm_term=.b3c70259fl38.

10.     In January 2018, an Indian newspaper reported that the information housed in Aadhaar was available for purchase for less than $8 and in as little as 10 minutes. Rachna Khaira, *Rs 500, 10 Minutes, and You Have Access to Billion Aadhaar Details*, The Tribune (Jan. 4, 2018), available at http://www.tribuneindia.com/news/nation/rs-500-10-minutes-and-you-haveaccessto-billion-aadhaar-details/523361.html.

11.     Plaintiffs were identified by Defendants by using a biometric finger scan when they sold their plasma.

12.     The Illinois Biometric Information Privacy Act (hereinafter "BIPA" or the "Act") expressly obligates Defendants to obtain an executed, written release from an individual, as a condition of employment, in order to capture, collect, and store an individual's biometric identifiers or biometric information, especially a fingerprint or hand geometry scan, and biometric information derived from it.

13.     BIPA further obligates Defendants to inform plasma sellers in writing that a biometric identifier or biometric information is being collected or captured; to tell plasma sellers in writing for how long they will store their biometric data or information and any purposes for

which biometric information is being captured, collected, and used; and to make available a written policy disclosing when it will permanently destroy such information.

14.     BIPA makes all of these requirements a *precondition* to the collection or recording of fingerprints, hand geometry scans, or other associated biometric information – under the Act, no biometric identifiers or biometric information may be captured, collected, purchased, or otherwise obtained if these pre-capture, pre-collection, pre-storage, or pre-obtainment requirements are not met.

15.     There is no realistic way, absent surgery, to reassign someone's biometric data. A person can obtain a new social security number, but not a new hand, which makes the protection of, and control over, biometric identifiers and biometric information particularly vulnerable.

16.     Defendants captured, collected, received through trade, and/or otherwise obtained and biometric identifiers or biometric information of their Illinois plasma sellers, like Plaintiffs, without properly obtaining the above-described written executed release, and without making the required disclosures concerning the collection, storage, use, or destruction of biometric identifiers or information.

17.     Upon information and belief, Defendants lack retention schedules and guidelines for permanently destroying Plaintiffs' and the Class's biometric data.

18.     The Defendants do not maintain a publicly available policy relating to biometric information.   For example, Defendant Kedrion Biopharma, Inc maintains the Privacy Policy on the www.KEDPlasma.us website relating to "find out more about how to become a donor."  The Privacy Policy says nothing about biometric privacy and no member of the public can learn of the Defendants' biometric privacy rights.

19.     Plaintiffs and the putative Class are aggrieved by Defendants' failure to destroy their biometric data when the initial purpose for collecting or obtaining such data has been satisfied or within three years of their last interactions with the company.

20.     Plaintiffs seek damages and injunctive relief for Defendants' BIPA violations, for themselves and all those similarly situated.

### PLAINTIFFS' SPECIFIC ALLEGATIONS

21.      Plaintiffs sold plasma at one of Defendants' Illinois-based plasma donation centers within the 5 year period prior to the filing of this Complaint.

22.     As a plasma seller, Plaintiffs were required to scan at least one fingerprint so Defendants could create, collect, capture, construct, store, use, and/or obtain a biometric template.

23.     Defendants then used Plaintiffs' biometrics as an identification and authentication method to track their identity.

24.     Defendants subsequently stored Plaintiffs' biometric data in its database(s).

25.     Each time that Plaintiffs sold plasma they were required to scan their fingerprints using the biometric device.

26.     Plaintiffs were not informed of the specific limited purposes or length of time for which Defendants collected, stored, or used their biometrics.

27.     Plaintiffs were never informed of any biometric data retention policy developed by Defendants, nor were they ever been informed of whether Defendants will ever permanently delete their biometrics.

28.     Plaintiffs were never provided with nor ever signed a written release allowing Defendants to collect, capture, store, or otherwise obtain their fingerprint print(s), handprint, hand geometry, or other biometrics.

29.     Plaintiffs have continuously and repeatedly been exposed to the risks and harmful conditions created by Defendants' violations of BIPA alleged herein.

30.     BIPA protects sellers like Plaintiffs putative Class from this precise conduct, and Defendants had no right to secure this data without complying with BIPA.

31.     Through BIPA, the Illinois legislature has created a right – a right to receive certain information prior to an employer securing their highly personal, private and proprietary biometric data – and an injury – not receiving this extremely critical information.

**ILLINOIS'S STRONG STANCE ON PROTECTION OF BIOMETRIC INFORMATION**

32.     BIPA provides valuable privacy rights, protections, and benefits to plasma sellers in Illinois.

33.     For example, BIPA's requirements ensure that the environment for taking of biometrics is not forced or coerced; that individuals are freely advised that, by scanning one's fingerprint and/or finger geometry, the employer or plasma company is capturing, extracting, creating, and recording biometrics; that individuals can keep tabs on their biometric roadmaps (*e.g.,* who has their biometrics, for long how, and how it is being used). The BIPA-required environment for the taking of biometrics provides legislatively-imposed peace for biometric subjects.

34.     To this end, in passing the Biometric Information Privacy Act (hereinafter "the Act"), the Illinois General Assembly found:

(a) The use of biometrics is growing in the business and security screening sectors and appears to promise streamlined financial transactions and security screenings.

(b) Major national corporations have selected the City of Chicago and other locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions, including finger-scan technologies at grocery stores, gas stations, and school cafeterias.

(c) Biometrics are unlike other unique identifiers that are used to access finances or other sensitive information. For example, social security numbers, when compromised, can be changed. Biometrics, however, are biologically unique to the individual; therefore, once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions.

(d) An overwhelming majority of members of the public are weary of the use of biometrics when such information is tied to finances and other personal information.

(e) Despite limited State law regulating the collection, use, safeguarding, and storage of biometrics, many members of the public are deterred from partaking in biometric identifier-facilitated transactions.

(f) The full ramifications of biometric technology are not fully known.

(g) The public welfare, security, and safety will be served by regulating the collection, use, safeguarding, handling, storage, retention, and destruction of biometric identifiers and information.

See, 740 ILCS 14/5, Legislative findings; intent.

35.    The law is specifically designed to require a company that collects biometrics to do several things, *before collection,* aimed, in part, at educating and protecting the person whose biometrics it is taking for its own use, and requiring signed, written consent attesting that the individual has been properly informed and has freely consented to biometrics collection.

36.    The Act defines "Biometric identifier" as:

a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan,

mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

See, 740 ILCS 14/10.

37.    The Act defines "Biometric information" as:

any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual. Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers.

See, 740 ILCS 14/10.

38.    The Act defines "Confidential and sensitive information" as:

personal information that can be used to uniquely identify an individual or an individual's account or property. Examples of confidential and sensitive information include, but are not limited to, a genetic marker, genetic testing information, a unique identifier number to locate an account or property, an account number, a PIN number, a pass code, a driver's license number, or a social security number.

See, 740 ILCS 14/10.

39.    The Act defines "Private entity" as:

any individual, partnership, corporation, limited liability company, association, or other group, however organized. A private entity does not include a State or local government agency. A private entity does not include any court of Illinois, a clerk of the court, or a judge or justice thereof.

See, 740 ILCS 14/10.

40.    The Act defines "Written release" as:

informed written consent or, in the context of employment, a release executed by an employee as a condition of employment

See, 740 ILCS 14/10.

41.    The Act requires:

A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's

last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

740 ILCS 14/15(a).

42.    Additionally, the Act provides:

No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

> (1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;
>
> (2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and
>
> (3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

740 ILCS 14/15(b).

43.    BIPA provides statutory damages negligent and reckless or willful violations.

44.    The Act explicitly provides a private right of action for violations of the Act, and provides that a prevailing party "may recover for each violation:"

> (1) against a private entity that negligently violates a provision of this Act, liquidated damages of $1,000 or actual damages, whichever is greater;
>
> (2) against a private entity that intentionally or recklessly violates a provision of this Act, liquidated damages of $5,000 or actual damages, whichever is greater;
>
> (3) reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and
>
> (4) other relief, including an injunction, as the State or federal court may deem appropriate.

740 ILCS 14/20.

45.    In enacting BIPA, the Illinois General Assembly explicitly singled out and bound employers to BIPA's requirements. 740 ILCS § 14/10 (defining "Written release" in the context of employment); 740 ILCS § 14/15(b)(3).

46.    In fact, BIPA requires express written consent to capture or collect biometrics in the first place.

47.    Defendants violated these clear protections of the Act; Defendants violated, and upon information and belief, continues to violate their biometric privacy rights.

### DEFENDANTS' BIOMETRIC FINGER-SCANNING

48.    At relevant times, Defendants have taken the rather invasive and coercive step of requiring plasma sellers to be fingerprint scanned, and then using biometric information captured from those fingerprint scans, and data derived therefrom.

49.    Defendants have a practice of using biometric devices to track their plasma sellers, albeit without regard to Illinois' requirements under BIPA.

50.    Defendants caused biometrics from finger scans to be recorded, collected, captured, and stored at relevant times.

51.    Defendants have not, on information and belief, properly informed sellers in writing that a biometric identifier or biometric information is being captured, obtained, collected or stored; informed sellers in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; obtained sellers' proper written consent to the capture, collection, obtainment or storage of their biometric identifier and biometric information derived from it; or obtained written consent.

52.     Defendants did not at any time, on information and belief as part of their selling plasma: inform Plaintiffs in writing (or otherwise) that a biometric identifier and biometric information was being obtained, captured, collected, and/or stored, or of the specific purposes and length of term for which a biometric identifier or biometric information was being collected, captured, stored, and/or used; obtain, or attempt to obtain, Plaintiffs' executed written release to have Plaintiffs' biometrics captured, collected, stored, or recorded as a condition of donation – Plaintiffs did not provide consent required by BIPA to the capture, collection, storage, obtainment, and/or use of Plaintiffs' fingerprint, finger scan, finger geometry, or associated biometrics.

53.     Upon information and belief, Defendants have not publicly disclosed its retention schedule and guidelines for permanently destroying biometrics.

54.     Defendants, on information and belief, have no written policy, made available to the public, that discloses its retention schedule and/or guidelines for retaining and then permanently destroying biometric identifiers.

55.     Because Defendants neither published a BIPA-mandated data retention policy nor disclosed the purposes for their collection of biometric data, Defendants' plasma sellers have no idea whether Defendants sell, disclose, re-disclose, or otherwise disseminate his or her biometric data.

56.     Nor are Plaintiffs and the putative Class told whom Defendants currently disclose his or her biometric data, or what might happen to his or her biometric data in the event of a buyout, merger, or a bankruptcy.

57.     By and through the actions detailed above, the Defendant has not only disregard the Class' privacy rights, but also violated BIPA.

58.    Defendants' above-described use of biometrics benefits only the Defendants. There is no corresponding benefit to sellers; they are forced to use biometrics to sell plasma.

### CLASS ALLEGATIONS

59.    Plaintiffs bring this action on behalf of themselves and on behalf of the following:

> All persons who were enrolled in Illinois in the biometric system used by Defendants for plasma sellers from five years preceding the filing of this action to the date a class notice is mailed in this action.

Excluded from the Class are Defendants' officers and directors, Plaintiffs' counsel, and any member of the judiciary presiding over this action.

60.    **Numerosity:** The exact number of class members for each class is unknown and is not available to Plaintiffs at this time, but upon information and belief, there are in excess of forty potential class members, and individual joinder in this case is impracticable. Class members can easily be identified through Defendants' records and allowing this matter to proceed on a class basis will prevent any retaliation by Defendants against current sellers who are currently having their BIPA rights violated.

61.    **Common Questions:** There are several questions of law and fact common to the claims of Plaintiffs and the Class members, and those questions predominate over any questions that may affect individual Class members. Common questions include, but are not limited to, the following:

a.    whether Defendants have a practice of capturing or collecting sellers' biometrics;

b.    whether Defendants developed a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within three years of the individual's last interaction with Defendants, whichever occurs first;

c.    whether Defendants obtained an executed written release from finger scanned sellers before capturing, collecting, or otherwise obtaining their biometrics;

d.  whether Defendants obtained an executed written release from finger scanned
    sellers, as a condition of employment or donation, before capturing, collecting,
    converting, sharing, storing the biometrics;

e.  whether Defendants provided a writing disclosing to sellers the specific
    purposes for which the biometrics are being collected, stored, and used;

f.  whether Defendants provided a writing disclosing to finger scanned the length
    of time for which the biometrics are being collected, stored, and used;

g.  whether Defendants' conduct violates BIPA;

h.  whether Defendants' conduct was negligent, reckless, or willful;

i.  whether Plaintiffs and Class members are entitled to damages, and what is the
    proper measure of damages;

j.  whether Plaintiffs and Class members are entitled to injunctive relief.

62.    **Adequacy of Representation:** The Plaintiffs will fairly and adequately represent
and protect the interest of the class and has retained competent counsel experienced in complex
litigation and class action litigation. Plaintiffs have no interests antagonistic to those of the class,
and Defendant has no defenses unique to Plaintiffs.

63.    **Appropriateness:** Class proceedings are also superior to all other available
methods for the fair and efficient adjudication of this controversy because joinder of all parties is
impracticable. Further, it would be virtually impossible for the individual members of the Class to
obtain effective relief because of the fear and likelihood of retaliation by Defendant against current
sellers bringing a civil action as an individual. Even if Class members were able or willing to
pursue such individual litigation, a class action would still be preferable due to the fact that a
multiplicity of individual actions would likely increase the expense and time of litigation given the
complex legal and factual controversies presented in this Class Action Complaint. A class action,
on the other hand, provides the benefits of fewer management difficulties, single adjudication,
economy of scale, and comprehensive supervision before a single Court, and would result in

reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

**COUNT I – FOR DAMAGES AGAINST DEFENDANT**
**VIOLATION OF 740 ILCS 14/1, *ET SEQ*. – THE BIOMETRIC INFORMATION PRIVACY ACT**
**INDIVIDUALLY AND ON BEHALF OF BOTH CLASSES**

64.    Plaintiffs, individually and on behalf of all others similarly situated, repeat, re-allege, and incorporate all preceding paragraphs as if fully set forth herein.

65.    BIPA is a remedial statute designed to protect consumers, by requiring consent and disclosures associated with the handling of biometrics, particularly in the context of biometric technology. 740 ILCS 14/5(g), 14/10, and 14/15(b)(3).

66.    The Illinois General Assembly's recognition of the importance of the public policy and benefits underpinning BIPA's enactment, and the regulation of biometrics collection, is detailed in the text of the statute itself.

67.    Additionally, the Illinois Supreme Court has made clear that the Illinois Legislature intended to "subject[] private entities who fail to follow the statute's requirements to **substantial potential liability**, including liquidated damages, injunctions, attorney fees, and litigation expenses **'for each violation' of the law** (*id*. § 20) whether or not actual damages, beyond violation of the law's provisions, can be shown. *Id*. at ¶ 36 (emphasis added).

68.    Defendants have been and continue to be a "private entity."

69.    Defendants have been and continue to be in possession of Plaintiffs' biometrics, and it collected, captured, or otherwise obtained their biometric identifiers and biometric information within the meaning of the Act.

70.    As more fully set forth above, at relevant times Defendants collected, captured, or otherwise obtained, Plaintiffs' biometric identifiers and biometric information based on those

identifiers as defined by BIPA, 740 ILCS 14/10, through the imposition of biometric devices.

71.    In violation of 740 ILCS 14/15(a), Defendants failed to make such a written policy publicly available to Plaintiffs and other class members.

72.    In violation of 740 ILCS 14/15(b), Defendants have collected, captured, stored, and/or otherwise obtained Plaintiffs' and other class members' biometric identifiers and biometric information, without:

    a.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, that the biometric identifiers or biometric information were being obtained, collected, captured, and/or stored;

    b.  informing Plaintiffs and the Class (including, where applicable, their legal authorized representatives), in writing, of the specific purpose and length of term for which the biometric identifiers or biometric information were being collected, stored, and used; and

    c.  receiving a written release executed by Plaintiffs and/or Class members and executed by Plaintiffs and/or Class members as a condition of employment or donation.

73.    Defendants took Plaintiffs' and other class members' finger scans, and knowingly caused their biometrics to be captured, collected, stored, and/or otherwise obtained without making publicly available the required policy that explains, for example, any purposes for which the biometric identifiers and information were collected, a retention schedule, and guidelines for permanently destroying biometric identifiers and information.

74.    As a result of Defendants' above- described acts and omissions, Defendants have invaded the privacy of Plaintiffs and the Class; it has unlawfully and coercively taken their biometrics; it has failed to provide them with information required by BIPA; it has deprived them of benefits, rights, opportunities and decisions conferred and required by the Illinois legislature via BIPA; and it illegally captured, collected, recorded, possessed, converted, and/or stored their finger scans, biometrics, and property.

75.     Accordingly, Defendants have violated the BIPA, and Plaintiffs and the Class have been damaged and are entitled to damages available under the BIPA, including liquidated damages of $1,000 per negligent violation and/or $5,000 per willful or reckless violation. 740 ILCS 14/20(1).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of the Class of similarly situated individuals, prays for an Order as follows:

A.     Finding this action satisfies the prerequisites for maintenance as a class action and certifying the class as defined herein;

B.     Designating and appointing Plaintiffs as representatives of the Class and Plaintiffs' undersigned counsel as Class Counsel;

C.     Entering judgment in favor of Plaintiffs and the Class and against Defendant;

D.     Awarding Plaintiffs and the Class members liquidated damages of $1,000 per *each* negligent violation, $5,000 per *each* willful or reckless violation of BIPA;

E.     Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

F.     Granting all such other and further relief as the Court deems just and appropriate.

## COUNT II – FOR INJUNCTIVE RELIEF AGAINST DEFENDANTS
### VIOLATION OF 740 ILCS 14/1, *ET SEQ.* – THE BIOMETRIC INFORMATION PRIVACY ACT

76.     Plaintiffs, individually and on behalf of all others similarly situated, repeats, re-alleges, and incorporates all preceding paragraphs as if fully set forth herein.

77.     BIPA provides for injunctive relief. 740 ILCS 14/20(4).

78.     Plaintiffs and other Class members are entitled to an order requiring Defendants to make disclosures consistent with the Act and enjoining further unlawful conduct.

79.     First, Plaintiffs seek an order requiring Defendants to publicly disclose a written policy establishing any specific purpose and length of term for which Plaintiffs and other sellers' biometrics have been collected, captured, stored, obtained, and/or used, as well as guidelines for permanently destroying such biometrics when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first, as required by 740 ILCS 14/15(a).

80.     Second, Plaintiffs seek an order requiring Defendants to disclose whether Defendant has retained Plaintiffs' and other seller's biometrics in any fashion, and if, when, and how such biometrics were permanently destroyed, consistent with BIPA.

81.     Third, Defendants should be enjoined from further BIPA non-compliance and should be ordered to remedy any BIPA compliance deficiencies forthwith.

82.     Plaintiffs' and other Class members' legal interests are adverse to Defendant' legal interests. There is a substantial controversy between Plaintiffs and Class members and Defendant warranting equitable relief so that Plaintiffs and the Class may obtain the protections that BIPA entitles them to receive.

83.     Plaintiffs and the Class do not know what Defendants have done (or intends to do) with their biometrics. Absent injunctive relief, Defendants are likely to continue its BIPA non-compliance and Plaintiffs and other Class members will continue to be in the dark on the subject.

84.     For the reasons set forth above, Plaintiffs are likely to succeed on the merits of their claims.

85.     BIPA establishes the importance, value, and sensitive nature of biometrics, along with the need to protect and control it; Plaintiffs are entitled to know what Defendants have done

with it as set forth above, and to an affirmation and verification that it has been or will be permanently destroyed as required by 740 ILCS 14/15(a).

86.     The gravity of the harm to Plaintiffs and the Class, absent equitable relief, outweighs any harm to Defendant if such relief is granted.

87.      As a result, Plaintiffs request commensurate injunctive relief.

**WHEREFORE**, Plaintiffs, individually and on behalf of the classes they represent, pray for an Order as follows:

A.    Finding this action satisfies the prerequisites for maintenance as a class action set forth in 735 ILCS 5/2-801, *et seq.*, and certifying the class defined herein;

B.    Designating and appointing Plaintiffs as representatives of the class they represent and Plaintiffs' undersigned counsel as class counsel;

C.    Entering judgment in favor of Plaintiffs and the classes and against Defendant;

D.    Awarding Plaintiffs and the class members all damages available to Plaintiffs and the class available under applicable law, including statutory or liquidated damages;

E.    Providing commensurate injunctive relief for Plaintiffs and class members as set forth above;

F.    Awarding Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in this litigation; and

G.    Granting all such other and further relief as the Court deems just and appropriate.

Respectfully submitted,

Dated: January 24, 2023                                By: */s/ David Fish*

David Fish
Mara Baltabols
Fish Potter Bolaños, P.C.
200 East Fifth Avenue, Suite 115
Naperville, Illinois 60563
dfish@fishlawfirm.com
mara@fishlawfirm.com

Attorneys for Plaintiffs